# In the United States Court of Federal Claims

No. 22-583C

(Filed: September 12, 2022)

**NOT FOR PUBLICATION**

|  |  |
|---|---|
| **KENNETH J. FLYNN** | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

*Kenneth J. Flynn*, Washington, D.C., *pro se*.

*Andrew James Hunter*, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

**OPINION AND ORDER**

***SOLOMSON*, Judge**.

On May 25, 2022, Plaintiff, Kenneth J. Flynn, a resident of Washington, D.C., proceeding *pro se*, filed a complaint against Defendant, the United States, in this Court. ECF No. 1 ("Compl."). Pursuant to Rule 40.1(a) of the Rules of the United States Court of Federal Claims ("RCFC"), on May 27, 2022, this matter was randomly assigned to another judge of this Court. ECF No. 5. On at least twelve occasions in the next six weeks, Plaintiff submitted documents that were not in compliance with the rules of this Court. *See* ECF Nos. 6–14. In one of those filings, Plaintiff included a "motion to recuse" the originally assigned judge "under 28 USC § 455," alleging that she "violated [Plaintiff's] Sixth Amendment [by] not addressing [his] Motion for Councel [sic]" and "seemingly disregarded or selectively ignored" Plaintiff's filings. ECF No. 14 at 1, 3, 9. Plaintiff further accused that judge of "Bias and Prejudice effecting [sic]" her "impartiality." *Id.* at 10.[1] On July 11, 2022, that judge granted Plaintiff leave to file the non-compliant

---

[1] Plaintiff's motion to recuse the previous judge assigned to this case was not the first time Plaintiff improperly accused a judge of "[b]ias," "violat[ing]" his constitutional rights, or "ignor[ing]" his

documents, *see* ECF Nos. 7–14,[2] and recused herself from presiding over this matter, ECF No. 6 (citing 28 U.S.C. § 455(a)).  Accordingly, on July 12, 2022, the Clerk of the Court reassigned this case to the undersigned.  ECF No. 15.  On July 15, 2022, the Court stayed this action to evaluate the complaint for probable lack of jurisdiction, pursuant to RCFC 12(h)(3).  ECF No. 16.

Plaintiff's complaint is difficult to decipher.[3]  As far as the Court can discern, however, Plaintiff asserts that in 2003, he "unofficially" married Tammy Dewhurst, the ex-wife of David Dewhurst, the 41st Lieutenant Governor of Texas, and subsequently, Tammy became pregnant with his child.  Compl. at 1.  Plaintiff alleges that David Dewhurst arranged the "fetal abduction" of the child.[4]  *Id.*  Specifically, Plaintiff claims that David Dewhurst hired an individual "to take the fetus back to Houston[,] Texas," where the fetus was "implant[ed]" into a surrogate mother and raised by David Dewhurst as his own child.  *Id.*  In that regard, Plaintiff contends that Tammy Dewhurst and David Dewhurst violated his "[r]ights as a biological parent," the "Equal Protection Clause of the Fourteenth Amendment," and the "Embryo Protection Act," which, according to Plaintiff, "[c]ompels Federal protection of unborn persons."  ECF No. 1-2 at 2, 7.[5]

---

court filings.  ECF No. 14 at 1, 9.  In October 2016, Montana state authorities charged Plaintiff with two counts of assault with a weapon, *see* Complaint, *State v. Flynn*, No. DC-16-582 (Mont. Dist. Ct. Oct. 31, 2016), but dismissed the charges in January 2019, *see* Order of Dismissal, *State v. Flynn*, No. DC-16-582 (Mont. Dist. Ct. Jan. 8, 2019).  Plaintiff subsequently filed suit in the United States District Court for the District of Montana pursuant to 42 U.S.C. § 1983, alleging that "the prosecutors, the judge, [and] his criminal defense attorneys" violated his constitutional rights.  *Flynn v. Pabst*, 2019 WL 4751916, at *1 (D. Mont. Sept. 30, 2019).  In that same case, Plaintiff filed a motion to recuse the magistrate judge presiding over the matter, accusing the magistrate judge of "bias or prejudice toward [P]laintiff" and "[d]iscrimination toward [P]laintiff[']s mental disability and right to be heard."  Motion for Recusal at 1, *Flynn v. Pabst*, No. 19-58 (D. Mont. July 10, 2019), ECF No. 19.  Plaintiff further contended that the magistrate judge failed to "timely respon[d]" to Plaintiff's motions, which, according to Plaintiff, "seems to point to bias or prejudice toward [P]laintiff . . . [and] Abuse of Discretion."  *Id.* at 3–4.  The magistrate judge denied Plaintiff's motion for recusal.  *See* Order Denying Motion for Recusal, *Flynn v. Pabst*, No. 19-58 (D. Mont. July 16, 2019), ECF No. 22.

[2] The Court notes that ECF Nos. 7 and 8 are identical filings, as are ECF Nos. 11 and 12.

[3] The facts alleged in Plaintiff's complaint are assumed to be true and do not constitute factual findings by the Court.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

[4] "Fetal abduction is a crime in which a perpetrator forcibly cuts an unborn baby from a pregnant women's uterus."  Ann W. Burgess et al., *Fetal Abduction: Comparison of Two Cases*, J. Psychosocial Nursing & Mental Health Servs., Nov. 2016, at 37, 37.

[5] Plaintiff asserts that David Dewhurst violated the "Act for [P]rotection of Embryos (The Embryo Protection Act)," and engaged in the "[i]mproper use of reproduction [t]echnology."  ECF No. 1-2 at 7.  Plaintiff, however, appears to be referring to a German law, and, specifically, Section 1 of

Plaintiff also alleges that Tammy Dewhurst and David Dewhurst "with[e]ld from Plaintiff all [r]evenue gained from [the] [s]ale of [p]ropane [g]as," which constitutes "breach of a contract." ECF No. 1-2 at 2, 8. Moreover, Plaintiff asserts that they sold his farm and fifty percent of his "mineral rights" without his consent via a "forged a mineral deed without any agreement or consideration," in violation of the "Statute of Frauds," "rules of Conveyance," and Fifth Amendment right to "maintain property interests." *Id.* at 3–7, 9; *see also* ECF No. 7 at 8; ECF No. 9 at 2; ECF No. 11 at 4. Additionally, Plaintiff alleges that the president of Stockman Bank in Montana, in collusion with David Dewhurst, committed "[b]ank [f]raud . . . to gain [a]ccess to Plaintiff[']s mineral [r]ights." ECF No. 1-2 at 3. Plaintiff further claims that the bank "[s]cheme[d] to foreclose on [his] farm." *Id.*

Plaintiff further accuses David Dewhurst of "[a]buse of [p]ower, malfeasance in office, under the color of authority, criminal acts to deprive [P]laintiff of his rights protected by the Laws and the United States Constitution Beyond or Limits of Lawful authority of public figure," Compl. at 1, and "[c]onspiring to [d]efraud the United States Government" in violation of 18 U.S.C. § 371, ECF No. 1-2 at 8 (citing *Haas v. Henkel*, 216 U.S. 462, 479–80 (1910)). Plaintiff alleges that the government and David Dewhurst "used the Patriot Act in violation of the First Amendment and the Separation of Powers doctrine" to "keep track" of the Plaintiff by "wiretapping" his phone without a warrant and placing him on the "Government Watch List," thus "prohibit[ing] [him] from travel[ing]." ECF No. 1-2 at 7–8; *see also* ECF No. 7 at 16, 26–28; ECF No. 10 at 1; ECF No. 11 at 2, 3, 5; ECF No. 13 at 2; ECF No. 14 at 1. Plaintiff asserts that his "Second Amendment rights may have been violated [i]n previous [l]itigation [d]ue to [his] [d]esignation on the terrorist [l]ist," Compl. at 2, and that the "defamation from being on the Patriot [A]ct[']s government watch list ha[s] turned into a [l]iving nightmare," ECF No. 7 at 8. Plaintiff also claims that David Dewhurst committed "political spying" through the Federal Bureau of Investigation, and that the U.S. Department of Defense "was used against [him] through the Freedom of Information Act." ECF No. 1-2 at 7.

Furthermore, Plaintiff alleges discrimination pursuant to the "American Disabilities Act." ECF No. 7 at 77. Specifically, Plaintiff asserts that he was "discriminated against" and "taken advantage of" by various parties due to his impaired

---

such law, which is titled "Improper use of reproduction technology." *See* Embryonenschutzgesetz [ESchG] [Embryo Protection Act], Dec. 13, 1990, BGBl. I at 2746, § 1, last amended by Gesetz [G], Nov. 1, 2011, BGBl. I at 2228, art. 1 (Ger.), https://www.bundesgesundheitsministerium.de/fileadmin/Dateien/3_Downloads/Gesetze_und_Verordnungen/GuV/E/ESchG_EN_Fassung_Stand_10Dez2014_01.pdf. Putting aside the absurdity of this claim generally, this Court does not have jurisdiction to adjudicate claims predicated on foreign law. *See Wood v. United States*, -- Fed. Cl. --, 2022 WL 2840646, at *4 n.3 (2022) ("Foreign law is not among the money-mandating sources of law that fall within the ambit of the Tucker Act's waiver of sovereign immunity." (citing *De Archibold v. United States*, 57 Fed. Cl. 29, 34 (2003))).

memory and cognitive disabilities resulting from a car accident in 2010. ECF No. 7 at 2, 13, 16, 77; *see also* ECF No. 11 at 4, 5; ECF No. 14 at 6.

Finally, Plaintiff raises numerous claims of impropriety and violations of the "Due Process Clause" in prior state and federal court proceedings, including allegations against various individual government officers, such as county and federal attorneys and judges. ECF No. 7 at 9, 11–12; ECF No. 11 at 4; ECF No. 13 at 2; ECF No. 14 at 5, 7, 8.

Plaintiff seeks a "financial reward" of $15,000,000 "for injuries, damages, and rights violated." Compl. at 3; *see also* ECF No. 7 at 18. In addition, Plaintiff requests that the Court (1) "[r]emove [his] name from the Watch List [i]mmediately," Compl. at 3; *see also* ECF No. 11 at 5; ECF No. 14 at 1; (2) "set aside" the "forged deed," ECF No. 9 at 2; and (3) "Quiet Title . . . to regain lost mineral rights to a forged mineral [d]eed," *id.*

Lastly, Plaintiff moves for pro bono representation. ECF No. 7 at 3, 15, 16; ECF No. 13 at 2; ECF No. 14 at 3, 7.

Plaintiff is proceeding *pro se*, and this Court holds a *pro se* plaintiff's pleadings to "less stringent standards." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "even pro se plaintiffs must persuade the Court that jurisdictional requirements have been met." *Hale v. United States*, 143 Fed. Cl. 180, 184 (2019) (citing *Bernard v. United States*, 59 Fed. Cl. 497, 499, *aff'd*, 98 F. App'x 860 (Fed. Cir. 2004)). "It is well-established that the plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence." *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)). In the absence of subject-matter jurisdiction, the Court "must dismiss the action." RCFC 12(h)(3); *see also Kissi v. United States*, 493 F. App'x 57, 58 (Fed. Cir. 2012) ("If the Court of Federal Claims determines that it lacks subject matter jurisdiction, it must dismiss the claim." (citing RCFC 12(h)(3))).

The Tucker Act, which defines this Court's jurisdiction, "gives the Court authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act provides this Court with jurisdiction to decide "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act, however, "does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). Rather, "a plaintiff must [also] identify a separate source of substantive law that creates the right to money damages." *Id.* (first citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983); and then citing *United States v. Testan*, 424 U.S. 392, 398 (1976)). Moreover, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is

cognizable under the Tucker Act." *Mitchell*, 463 U.S. at 216. With respect to "money-mandating" claims, the plaintiff must identify a law that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967).

For the reasons explained below, the Court dismisses, *sua sponte*, Plaintiff's complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(h)(3). *See Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*." (citing *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998))).[6]

*First*, the Tucker Act limits this Court's jurisdiction to claims against the United States. *United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("[T]he Court of [Federal] Claims . . . jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against others than the United States[,] the suit as to them must be ignored as beyond the jurisdiction of the court." (citations omitted)). In that regard, the Court is precluded from hearing claims "against individual federal officials," *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997), and "claims against states, state agencies, or state officials," *Pikulin v. United States*, 97 Fed. Cl. 71, 75 n.7 (2011); *see also Moore v. Pub. Defs. Off.*, 76 Fed. Cl. 617, 620 (2007) ("When a plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations."); *Pauly v. United States*, 142 Fed. Cl. 157, 159 (2019) ("[Plaintiff]'s claim against the . . . state judge falls outside of this Court's jurisdiction and must be dismissed."). Accordingly, the Court has no jurisdiction to hear Plaintiff's claims against parties other than the United States.

*Second*, to the extent that Plaintiff alleges claims against the United States, Plaintiff "d[oes] not assert any claims deriving from money-mandating sources of law not sounding in tort" that would place Plaintiff's claims within this Court's jurisdiction. *Lawton v. United States*, 621 F. App'x 671, 672 (Fed. Cir. 2015); *see also Goines v. United*

---

[6] As discussed above, Plaintiff's complaint, which totals 128 pages across seven documents, is largely incoherent. Thus, while the Court has liberally construed Plaintiff's complaint, *see Haines*, 404 U.S. at 520, the Court only addresses the claims it could reasonably construe, *see Demes v. United States*, 52 Fed. Cl. 365, 369 (2002) ("While a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate."); *see also Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("The leniency granted to pro se petitioners . . . is not boundless. Pro se plaintiffs are treated to less stringent standards, but 'they are not automatically entitled to take every case to trial.' Traditionally the 'leniency standard' has still required basic pleading standards. Arguably, hanging the legal hat on the correct peg is such a standard, and '[l]iberal construction does not require a court to conjure allegations on a litigant's behalf.'" (second alteration in original) (first quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); then quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); and then quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001))).

*States*, 2015 WL 5853811, at *6 (Fed. Cl. Oct. 7, 2015) ("[T]he USA PATRIOT Act is not [a] money-mandating statute that confers jurisdiction to this Court[.]"); *Frazier v. United States*, 683 F. App'x 938, 940 (Fed. Cir. 2017) ("The [Court of Federal Claims] does not have jurisdiction over claimed violations of . . . FOIA because th[at] statute[] do[es] not contain money-mandating provisions." (citing *Snowton v. United States*, 216 Fed. App'x 981, 983 (Fed. Cir. 2007))); *Searles v. United States*, 88 Fed. Cl. 801, 805 (2009) (finding that this Court "is without jurisdiction to hear claims under the [Americans With Disabilities Act ('ADA')]" because the ADA "is not a statute mandating payment by the United States"). Thus, insofar as Plaintiff seeks to hold the United States liable for other harm he has allegedly suffered, such claims "sound[] in tort" and are outside this Court's jurisdiction. *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort." (citing 28 U.S.C. § 1491(a)(1))); *see also Kaye v. United States*, 513 F.2d 638 (Ct. Cl. 1975) ("To the extent that plaintiff asks for damages . . . for alleged wrongful acts of government officers in . . . depriving him of alleged rights, the suit[] sounds in tort and cannot be maintained in this court.").

*Third*, "[c]laims founded on state law are also outside the scope of the limited jurisdiction of the Court of Federal Claims." *Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir. 2007). Therefore, this Court does not have the authority to adjudicate Plaintiff's claims that are predicated on state law.

*Fourth*, to the extent that Plaintiff seeks to hold the United States liable for criminal acts such as theft, "fetal abduction," fraud, forgery, "political spying," and wiretapping, this Court also lacks jurisdiction over such claims. *See Jones v. United States*, 440 F. App'x 916, 918 (Fed. Cir. 2011) (noting that the Court of Federal Claims "has no jurisdiction over criminal matters generally" (citing 28 U.S.C. § 1491)). Moreover, the Court does not have jurisdiction over Plaintiff's claim of an alleged violation of 18 U.S.C. § 371 because this Court may not "adjudicate any claims whatsoever under the federal criminal code." *Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994).

*Fifth*, Plaintiff's constitutional claims are similarly outside this Court's jurisdiction. This Court does not have subject-matter jurisdiction to decide due process claims, equal protection claims, or claims based on the First, Second, or Sixth Amendments. *See Treviño v. United States*, 557 F. App'x 995, 998 (Fed. Cir. 2014) ("[T]he [Court of Federal Claims] does not have jurisdiction over . . . claims under the due process, equal protection or supremacy clauses of the United States Constitution."); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (finding that the Court of Federal Claims has no jurisdiction to hear due process claims under the Fifth and Fourteenth Amendments); *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (finding no jurisdiction based on First Amendment); *Jordan v. United States*, 128 Fed. Cl. 46, 53 (Fed. Cl. 2016) (holding that the Court lacks jurisdiction over Second Amendment claims); *Hernandez v. United States*, 93 Fed. Cl. 193, 198 (Fed. Cl. 2010) ("[T]he Court of Federal Claims does not have jurisdiction

over claims arising under the Sixth Amendment[.]"). Furthermore, to the extent Plaintiff alleges a Fifth Amendment takings claim, "[t]here clearly can be no taking when whatever acts complained of are those of private parties, not the government." *Alves v. United States*, 133 F.3d 1454, 1458 (Fed. Cir. 1998) (citing *767 Third Ave. Assocs. v. United States*, 48 F.3d 1575, 1582–83 (Fed. Cir. 1995)).

*Sixth*, although breach of contract claims often fall within this Court's jurisdiction, such claims must be predicated on express or implied contracts with the federal government, not private parties. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract *with the United States*." (emphasis added)). Nothing in Plaintiff's complaint suggests that Plaintiff had a contract with the United States. Nor does Plaintiff allege that anyone with "actual authority to bind the government in contract" entered into a contract with Plaintiff. *Juda v. United States*, 6 Cl. Ct. 441, 452 (1984). Thus, the Court lacks jurisdiction to hear Plaintiff's "breach of contract" claim.

Finally, and apart from the jurisdictional defects already discussed, the doctrine of collateral estoppel, also known as issue preclusion, also bars this Court's consideration of some of the issues raised in Plaintiff's complaint. Collateral estoppel "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Brownback v. King*, 592 U.S. --, 141 S. Ct. 740, 747 n.3 (2021). In that regard, Plaintiff raises issues already litigated before this Court. Specifically, in *Flynn v. United States*, 2020 WL 1970543 (Fed. Cl. Apr. 24, 2020), *appeal dismissed per curiam*, No. 20-1951 (Fed. Cir. Jan. 13, 2021), and *Flynn v. United States*, No. 20-212C (Fed. Cl. June 11, 2020), *appeal dismissed per curiam*, No. 20-2103 (Fed. Cir. Jan. 13, 2021), this Court dismissed Plaintiff's nearly identical allegations that judges, prosecutors, and defense attorneys engaged in evidence tampering, due process violations, discrimination, and other forms of misconduct in connection with his state criminal prosecution, *see* Order of Dismissal, *State v. Flynn*, No. DC-16-582 (Mont. Dist. Ct. Jan. 8, 2019), and his 42 U.S.C. § 1983 civil rights suit in the United States District Court for the District of Montana, *see Flynn v. Pabst*, 2019 WL 4751916 (D. Mont. Sept. 30, 2019), *recons. denied*, 2020 WL 3971321 (D. Mont. July 14, 2020), *aff'd*, No. 19-35840 (9th Cir. July 24, 2020). Accordingly, even if the Court had jurisdiction over these issues — and the Court does not — such issues are barred by the doctrine of collateral estoppel.

For the reasons explained above, the Court hereby **DISMISSES** Plaintiff's complaint. The Clerk of the Court shall enter **JUDGMENT** for the government. Additionally, the Court **DENIES AS MOOT** Plaintiff's request for pro bono representation.

Furthermore, because Plaintiff has repetitively filed complaints which needlessly consume the resources of the Court, the Court hereby enters the following anti-filing

injunction: Plaintiff is immediately **ENJOINED** from filing any new complaints with this Court without first obtaining leave from the Chief Judge of the United States Court of Federal Claims to do so.  Any motion for leave to file must include as an attachment a full complaint that meets all of the requirements of RCFC 8; in particular, the complaint must identify the source of law supporting this Court's jurisdiction over the claims asserted.  Thus, the Clerk of the Court is directed to **REJECT** all future complaints from Plaintiff unless filed by leave of the Chief Judge.

**IT IS SO ORDERED**.

s/Matthew H. Solomson<br>
Matthew H. Solomson<br>
Judge